Decided July 17, 1987

PEOPLE OF MICRONESIA, INC.,  )    CIVIL ACTION NO. 85-0002
et al.,                      )
                             )
          Plaintiffs,        )         DECISION
                             )
     vs.                     )
                             )
CONTINENTAL AIR LINES, INC.  )
et al.,                      )
                             )
          Defendants.        )
_____)

Plaintiffs filed this Class Action suit in January, 1985, alleging that Defendants had violated the Securities Exchange Act, the Foreign Corrupt Practices Act, and the Racketeer Influenced and Corrupt Organizations Act in their attempt to gain control of Air Micronesia, Inc. (Air Mike). Plaintiffs claimed to represent all present Air Mike and United Micronesia Development Association, Inc. (UMDA) shareholders and past shareholders of UMDA who sold shares to Defendants during specified periods. Though the original pleadings were couched in terms of a Rule 23(b)(3) class action Plaintiffs later supplemented their complaint with 23(b)(1) and 23(b)(2) language. The parties have arrived at a tentative settlement agreement disposing of all claims in this and numerous other actions here and elsewhere and now seek certification of the class and

approval of the settlement. For the reasons set forth below, the Court finds that the class should be certified and that the settlement is fair and it is hereby approved.

## FACTS

In November, 1966, UMDA, Aloha Airlines, Inc. (Aloha), and Continental Airlines, Inc. (Continental) entered into a pre-incorporation agreement to form Air Mike for the purpose of providing commercial air service in the Trust Territory. The formation of Air Mike followed, in 1967, with great hopes for a Micronesian owned and operated airline. Civil Aeronautics Board (CAB) and Federal Aviation Administration (FAA) permits and certificates were obtained by Continental and Air Mike and they jointly began providing commercial airline service in Micronesia.

Air Mike alleges it never received any profits from the Micronesian operations. Continental asserts that there never were any profits and in fact the business has lost money. In 1973, the parties entered into a profit sharing agreement aimed at alleviating the financial problems that had besieged Air Mike. Under this agreement, Continental was to pay Air Mike fifty percent of the net income before taxes derived from Trust Territory operations. This agreement also failed in its proposed objective and tensions between the parties became strained. Rather than succumb to Air Mike's complaints Continental, in Chapter 11 actions before the Houston Bankruptcy Court, chose to stifle the complaints by acquiring Air Mike via a hostile

takeover of UMDA, Air Mike's controlling shareholder. Continental attempted to use the Houston Bankruptcy proceeding as a sword to eradicate resistance to its unstated objective rather than as the shield as bankruptcy was intended to be. Without this lawsuit, Continental may have achieved that result.

POM filed CV 85-0002 in this Court seeking to prevent Continental from taking over UMDA and, ultimately, Air Mike. After more than two years of intense litigation, the suit has progressed from the complaint stage through several defaults, where it now rests. Before the Court are Plaintiffs' motion to certify the class as well as Plaintiffs' motion to approve the settlement as being fair to all class members.

The settlement provides among other things that Air Mike shareholders Aloha and UMDA will receive a total of $1,000,000 per year for 25 years (26 total payments). Also included in the settlement is a provision for Air Mike to receive an initial $100,000 payment and one percent of annual joint venture gross revenues exceeding $100,000,000. The agreement further sets out that Air Mike will be able to independently apply for CAB permits and it will also retain ownership of its 727-100 jet liner after the lease to Continental expires in 1989.

## ANALYSIS

Class Certification.

Rule 23(a) provides that

One or more members of a class may sue

**88**

or be sued as representative parties on behalf of all only if

> (1) the class is so numerous that joinder of all members is impracticable,

> (2) there are questions of law or fact common to the class,

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

> (4) the representative parties will fairly and adequately protect the interests of the class.

The parties estimate that there are approximately 1000 similarly situated individual shareholders and former shareholders throughout Micronesia and the United States. Clearly, this figure represents a sufficient number to invoke subpart (1) of Rule 23(a). The suit seeks to enjoin Continental from gaining control of Air Mike through its efforts to acquire UMDA stock via a scheme which allegedly included violations of federal law. These common questions of law and fact satisfy 23(a)(2). Since all parties are similarly situated, the Plaintiffs' claims are typical of the class, satisfying 23(a)(3). Finally, this Court now rules that Plaintiffs and their attorneys have and will fairly and adequately protect the interests of the class members and, therefore, 23(a)(4) is satisfied.

Initially, this suit was phrased in terms of a 23(b)(3) action, however, Plaintiffs have supplemented their complaint to incorporate the language of Rule 23(b)(1) and (2). Rule 23(b)(1) class actions are those in which:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

The Court can conceive of situations in which inconsistent adjudications could result, particularly in light of the fact that aspects of this dispute are before several courts in the United States as well as in the Federated States of Micronesia. Conversely, the resolution of a single Plaintiff's claim could be dispositive of non-class members interests. Plaintiff's claims, therefore, meet the requisites of both 23(b)(1)(A) and 23(b)(1)(B) and will be certified under both.

Plaintiffs also have moved to certify the Class under Rule 23(b)(2). Rule 23(b)(2) class actions are limited to those situations in which:

> (2) the party opposing the Class has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

The facts of this case indicate that certification under Rule 23(b)(2) is also appropriate in that Plaintiffs' suit

**90**

alleges that Continental has acted to the detriment of all proposed class members and the complaint asks for declaratory and injunctive relief against Continental.

Notice to Class Members.

Rule 23(e) mandates that notice of a proposed settlement in a class action shall be given to all members of the class in such manner the court directs.

The parties have published the complete draft of the settlement agreement for seven consecutive days in the Pacific Daily News, a newspaper of general circulation throughout Micronesia. The settlement was published for two consecutive weeks in both the Marianas Variety, a Saipan weekly newspaper, and the weekly Marshall Islands newspaper, the Marshall Islands Journal. The notice of the settlement was broadcast in English and the major local language three times in a one week period over local radio stations on Saipan, Northern Mariana Islands; Majuro, Marshall Islands; Kolonia, Pohnpei; Moen, Truk; Colonia, Yap; and Koror, Palau. The notice was also posted in public places on the islands set out above and was mailed to the shareholders at each shareholder's address as listed in the corporate records of the applicable corporation. The method of dissemination was appropriate in that it utilized every available means to inform every interested party of the pending settlement and disposition of this action.

The content of the notice was sufficient to apprise the

interested parties of the settlement in that it contained the
entire settlement agreement in English and the parties' native
language. The notice defined the proposed Class and informed
Class members that they could object to the settlement through
written or oral communication with the Court and/or one of the
attorneys involved.

Aloha has objected to the content of the notice in that
it does not instruct class members of the availability of
opting-out of the settlement as per Rule 23(b)(3). The Court
notes at the outset that Aloha is not a party to CV 85-0002 nor
is it a member of the proposed class and therefore, it does not
have standing to object to the settlement, whether the objections
relate to form or substance. The Court, however, will address
Aloha's concerns in an effort to insure that no area is
overlooked in the determination of the fairness question.

Rule 23(b)(3) class actions permit potential class
members to opt-out of the proposed class and avoid being bound by
a settlement if they choose to. The rule requires that notice to
potential class members include language of the availability of
the opt out provision. Though POM's original complaint contained
23(b)(3) language, it has supplemented its complaint with
23(b)(1) and (2) language and now seeks certification under these
two provisions. Rule 23(b)(1) and 23(b)(2) class actions do not
permit class members to opt-out and consequently opt-out language
is not required in the notice. For this reason, Aloha's
objection to the notice is without merit.

92

This Court has preliminarily approved the content of the notice and the proposed method of dissemination and it now reaffirms its position as to both.

The Fairness of the Settlement.

Rule 23(c) requires court approval of class action settlements, however, it is silent respecting the standard by which a proposed settlement is to be evaluated. "[T]he universally applied standard is whether the settlement is fundamentally fair, adequate, and reasonable." Officers for Justice v. Civil Service Commission, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 103 S.Ct. 1219 (1983). The District Court's determination is an "amalgam of delicate balancing, gross approximations, and rough justice." Id.

The documentary evidence introduced in these proceedings and the representations of counsel have led this Court to believe that since before the drafting of the pre-incorporation agreement there has been a plan of a Micronesian owned and operated commercial airline service in Micronesia. Thus the birth of Air Mike and with it the expectation of the fruition of that plan. Until now that plan has not been realized and in fact Air Mike has become a paper entity; form without substance. The proposed settlement agreement promises to change that and convert Air Mike into a full-fledged viable concern.

The settlement provides that all injured Air Mike

shareholders will be rewarded for their stubborn commitment to the cause. The benefits include money to the shareholder corporations and air passes to individual shareholders of UMDA. The shareholders will obtain an indirect benefit of increased percentage ownership of Air Mike since Continental has agreed to return its Air Mike stock as treasury shares. The annual payments to UMDA and Aloha will provide an appreciable rate of return on the initial investment of each corporation.

Air Mike for the first time in its corporate life has the opportunity to sustain itself with the initial receipt of $100,000 from Continental and subsequent payments of one percent of the gross revenues from Micronesian operations in excess of $100,000,000. Further, Air Mike will have the opportunity to spread its own wings in certain markets not presently served by the joint venture. Aloha argues that the settlement is not fair to Air Mike because as it alleges the benefits flow directly to UMDA and Aloha. The Court reiterates its earlier position that Aloha does not have standing to object to the settlement but in the interests of justice it will address Aloha's concerns. Though the yearly installment payments will go directly to Aloha and UMDA, Air Mike will obtain other significant benefits from the settlement including those set out in the paragraph above. Additionally, it was Aloha that insisted throughout the settlement negotiations that it receive direct payments from Continental rather than indirectly through Air Mike. And finally, the parties have espoused that it was Air Mike's

94

shareholders Aloha and UMDA who were injured as a result of Continental's alleged misdeeds and it is they who should be compensated, not Air Mike.

Finally, this Court has lived with this case since January, 1985. The parties and the pleadings are all too familiar to the Court and the respective parties as well. Through its invitation by the parties to serve as the settlement mediator, the Court has become knowledgeable about the principal players and problems in this corporate struggle and it is the observation of the Court that this settlement is the result of a truly adversarial dispute resolution process. The relationships are strained to the breaking point and the Court believes that neither party will bend an inch. The disintegration of the settlement agreement at this point would surely result in protracted, lengthy, and expensive litigation that would ultimately end in neither side being pleased with the final outcome. It is evident from the facts as presented to the Court that delaying the final disposition of this case would force several of the key corporations into bankruptcy, which would only prolong and further complicate matters.

Following years of intense negotiations the parties have arrived at a settlement of all claims and causes of action which will result in compensation to individuals for their alleged injuries and leave Air Mike on its feet ready to operate as a viable concern in Micronesia. The Court deems that the settlement is fair and in the best interests of all interested

parties and for this reason the settlement shall be and is hereby approved.

DATED this 17TH day of July, 1987.

_____
Judge Alfred Laureta

96